UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:                                              Case No.: 1-09-40387-dem

AMIEL ISHAKY,                                       Involuntary Chapter 7
Alleged Debtor.
------------------------------------------------------x
In re:                                              Case No.: 1-09-40386-dem

RAMADA HOMES, INC.,                                 Involuntary Chapter 7
Alleged Debtor.
------------------------------------------------------x
In re:                                              Case No.: 1-09-40389-dem

523 RUTLAND DEVELOPMENT CORP.,                      Involuntary Chapter 7
Alleged Debtor.
------------------------------------------------------x
In re:                                              Case No.: 1-09-40392-dem

2443 POPLAR STREET CORP.                            Involuntary Chapter 7
Alleged Debtor.
------------------------------------------------------x

Appearances:

Barry H. Phillips, Esq.
Law Office of Barry Phillips
Attorney for Alleged Debtor
114 Old Country Road, Suite 248
Mineola, New York 11501

Robert J. Gumenick, Esq.
Law Office of Robert J. Gumenick, PC
Attorney for Petitioning Creditors
160 Broadway, Suite 1100
New York, New York 10038

Amiel Ishaky
Alleged Debtor
81-37 190th Street
Jamaica, New York 11435

Diana G. Adams, Esq.
Office of the United States Trustee
271 Cadman Plaza East, Suite 4529
Brooklyn, NY 11201

**DECISION ON MOTION TO DISMISS INVOLUNTARY PETITION**

DENNIS E. MILTON
UNITED STATES BANKRUPTCY JUDGE

**INTRODUCTION**

This matter comes before the Court on the filing of an involuntary petition by creditors, AMK Capital Corp. ("AMK") and MBM Capital Corp. ("MBM") (collectively the "Petitioning Creditors") under Chapter 7 of the Bankruptcy Code against Amiel Ishaky ("Ishaky"), Ramada Homes, Inc., 523 Rutland Development Corp., and 2443 Poplar Street Corp. (collectively the "Alleged Debtors"). After due deliberation, the Court hereby denies the Petitioning Creditors' Application for the reasons set forth below.

**JURISDICTION**

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2) and the Eastern District of New York standing order of reference dated August 28, 1986. This Decision and Order constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr. P. 7052.

**BACKGROUND**

Petitioning Creditors are private lending companies that are run by Alan Kapson ("Kapson"), who served as the President of both AMK and MBM. See Transcript of April 29, 2009 Trial ("Tr") at 14:1-13. Both parties agree that the Petitioning Creditors had a business

2

relationship with the Alleged Debtors. See Petitioning Creditors' Emergency Motion to Appoint an Interim Chapter 7 Trustee ("Trustee Motion") at 2; Alleged Debtors' Post Trial Memorandum of Law in Opposition ("Alleged Debtors' Post Trial Memorandum") at 4.  One of the Alleged Debtors, Ishaky, would identify a property for development, which usually entailed the creation of multiple family homes and the receipt of financing from one of the Petitioning Creditors or an outside source. See Trustee Motion at 3.  Kapson would routinely make the financing arrangements for the development.  As a general practice, Ishaky would build, sell and manage the properties. See id.; Alleged Debtor's Post Trial Memorandum at 4.

On January 22, 2009, the Petitioning Creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against the Alleged Debtors.  The involuntary summonses were issued on or about January 29, 2009.  On February 4, 2009, the Petitioning Creditors filed the Trustee Motion and a Motion to Limit Notice and for an Expedited Hearing on Emergency Motion (the "Notice Motion").  On February 19, 2009, the Alleged Debtors filed an Objection to the Involuntary Petition (the "Objection").

By an order dated February 25, 2009, this Court granted the Notice Motion and set a hearing date of March 11, 2009 for the Trustee Motion and related issues.  The March 11, 2009 hearing was adjourned, initially to March 26, 2009, and then to April 20, 2009.  The Court heard testimony on the Petitioning Creditors' petition and Alleged Debtors "Objection" on April 20, 2009, April 29, 2009 and May 26, 2009.  After the hearings, each party submitted a post-trial memorandum in support of its position.

At the hearings, Petitioning Creditors submitted into evidence five mortgages and one note between Ishaky and AMK, one mortgage between Ishaky and MBM, two mortgages and

three notes between 523 Rutland Development Corp. and AMK, two mortgages and one note between 2443 Poplar Street Corp. and AMK, two mortgages and three notes between Ramada Homes, Inc. and AMK, and a guaranty note affecting 2443 Poplar Street Corp.  See Petitioning Creditors' Exhibits 3, 4, 6 - 9, 12-16, 24-30, 32-34.

The Petitioning Creditors asserted that the Alleged Debtors have incurred secured and unsecured debt of approximately $15 million to the Petitioning Creditors in connection with numerous real estate development ventures which were financed by the Petitioning Creditors. See Trustee Motion at 2.  Petitioning Creditors further alleged that the Alleged Debtors had failed to account for some of the funds obtained from Petitioning Creditors for use on certain properties and were renting properties that were intended for sale.  Id. at 4.  In addition, Petitioning Creditors alleged that the Alleged Debtors were not making payments on debt due and the properties which the Petitioning Creditors  financed were severely under-secured.  Id.

The Alleged Debtors maintained that on at least twelve occasions,  Kapson arranged private financing for properties which the Alleged Debtors purchased.  See Alleged Debtors' Post Trial Memorandum at 3.  According to the Alleged Debtors, during these transactions Kapson acted as the attorney for Ishaky individually, the Alleged Debtors, and Petitioning Creditors or private lenders.  Id.  The Alleged Debtors argued that Kapson's multiple representation in these transactions violated the New York State Code of Professional Responsibility.  Id. at 5 - 6.  The Alleged Debtors further argued that these actions affected  the integrity of the transactions, and they sought  to have certain foreclosure proceedings dismissed and the mortgages voided.  Id.

The Alleged Debtors have not filed any schedules with the Court and maintain that

all claims of the Petitioning Creditors against the Alleged Debtors are the subject of a bona fide dispute. In 2008, Kapson, as principal for AMK and MBM, commenced litigation against Ishaky and the Alleged Debtors with respect to foreclosure actions on ceratin properties in Queens and the Bronx. At the hearing, Petitioning Creditors submitted into evidence three judgments by confession against Ishaky in favor of AMK dated December 18, 2008. See Petitioning Creditors Exhibits 17, 18 and 24. On June 8, 2009, the Alleged Debtors filed a complaint against Kapson and AMK alleging misrepresentation, breach of contract, and damages in regards to Petitioning Creditors' involvement in twelve properties. See Alleged Debtors' Exhibit E.

## DISCUSSION

### A. DISMISSAL OF THE INVOLUNTARY PETITION UNDER 11 U.S.C. § 303 IS WARRANTED

The filing of an involuntary petition is governed by 11 U.S.C. § 303. Section 303 provides in pertinent part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title -
>
> > (1) by three of more entities, each of which is either a holder of a claim against a person that is not contingent as to liability or the subject of a bona fide dispute as to liability and amount... if such noncontingent undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
> >
> > (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $13,475 of such claims...

> (h)  If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the Court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if -
>
> > (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount...

11 U.S.C. § 303.  In In re Euro-American Lodging,   357 B.R. 709, 712 (Bankr. S.D.N.Y. 2007), the Court established a four-prong test based on the provisions of Section 303 of the Bankruptcy Code for the sufficiency of an involuntary petition in bankruptcy. In order to prevail on an involuntary petition a petitioning creditor must prove that "(i) the petitioning claimholder's claim is not contingent as to liability or subject to a *bona fide* dispute as to liability or amount, (ii) the petitioning claimholder is undersecured by at least [$13,475], (iii) there are fewer than twelve claimholders (not counting insiders, employees, transferees of voidable transfers, and holders of contingent or disputed claims), and (iv) the alleged debtor is generally not paying its debts as they become due." Id.  As shown below, the Petitioning Creditors have failed to establish each  of these elements.

1.  The Record Before the Court Establishes That the Claim of the Petitioning Creditors Is a *Bona Fide* Dispute as to Liability and Amount

In order for the Petitioning Creditors to succeed with the involuntary petition, the claims must not be subject to a *bona fide* dispute as to liability and amount.  See 11 U.S.C. § 303(b)(1). The Court of Appeals for the Second Circuit adopted an "objective test" to define the term "bona fide dispute."  Key Mechanical, Inc. V. BDC 56 LLC (In re BDC 56 LLC), 330 F. 3d 111, 118 (2d. Cir. 2003).  To determine whether a *bona fide* dispute exists, the bankruptcy court

" 'must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt.' " Id. at 117 (citing In re Lough, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)).  The objective standard allows a creditor to be disqualified whenever there is any legitimate basis for the debtor not paying the debt, factual or legal.  See In re Lough, 57 B.R. at 997.  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended Section 303 and expanded the issue of a *bona fide* dispute to encompass not only issues of liability but also issues of the amount owed.  See 11 U.S.C. § 303(b)(1); See also In re Euro-American Lodging, 357 B.R. at 712 n.8.

When applying the objective test, the Second Circuit also adopted a burden shifting framework.  In re BDC 56 LLC, 330 F. 3d at 118.  A petitioning creditor must first establish a *prima face* case that no *bona fide* dispute exists before the burden shifts to the debtor.  See id.  "Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden."  Id. (quoting Rimell v. Mark Twain Bank, 946 F.2d 1363, 1365 (8th Cir. 1991)).

Here, the parties agree that the Petitioning Creditors and the Alleged Debtors had a business relationship whereby the Alleged Debtors located, managed, and sold property which the Petitioning Creditors financed.  The Petitioning Creditors have submitted into evidence numerous instruments connecting the parties to this business relationship.  Petitioning Creditors maintained that the Alleged Debtors are not making payments due on mortgages.  However, Petitioning Creditors alleged more than lack of payment by the Alleged Debtors; they also argue that the Alleged Debtors cannot account for funds which the Petitioning Creditors advanced and that the Alleged Debtors were renting properties that were intended for sale. The Court finds that a

7

dispute exists regarding the obligations of the parties surrounding the business transactions here. In addition, the Alleged Debtors maintain the Mr. Kapson, president of the Petitioning Creditors, acted as dual counsel to both the Alleged Debtors and the Petitioning Creditors or lending institutions on at least twelve occasions. The Alleged Debtors argue that this dual representation was in violation of the New York State Code of Professional Responsibility and affects the validity of the mortgages between the parties.[1] Therefore, the Court finds that a *bona fide* dispute arises over the liability of the mortgages and instruments between the parties and the involuntary petition must be dismissed.

The Petitioning Creditors have also failed to establish that their claims are not subject to a *bona fide* dispute as to amount. The Petitioning Creditors alleged that Alleged Debtors have incurred secured and unsecured debt of approximately $15 million to the Petitioning Creditors. See Trustee Motion. However, Petitioning Creditors have submitted into evidence twenty-one notes, mortgages and guarantee notes totaling approximately $13.7 million. The Court also notes that Petitioning Creditors submitted into evidence three judgments against Ishaky in favor of AMK for approximately $1.7 million. Petitioning Creditors maintained that Alleged Debtors have not been making any payments on the mortgages. However, the Petitioning Creditors have presented no documentary evidence, such as affidavits or worksheets fixing the amounts alleged to be in default. Therefore, the Court finds that there is a genuine dispute as to the amount due and owing under the mortgages and instruments between the parties and the involuntary petition must be dismissed.

---

[1] Petitioning Creditors argue that the alleged dual representation is not impermissible and is also not a defense to the payment of a loan obligation. However, the Second Circuit held in In re BDC 56 LLC, that the court's objective is to ascertain whether a bona fide dispute exists, not to actually resolve the dispute. 330 F. 3d at 118. Therefore, the Court need not determine the merits of the Alleged Debtors' claims and defenses at this time.

Based upon the hearing testimony of Ishaky and Kapson, and the post-hearing memoranda of the Petitioning Creditors and the Alleged Debtors, the Court also finds that the Petitioning Creditors have failed to establish that the petitioning claimholder's claim is not contingent as to liability. The Court finds this to be a two party dispute in which the parties have adequate remedies in State Court. See In re Mountain Dairies, 372 B.R. 623 (Bankr. S.D.N.Y. 2007). Accordingly, the involuntary petition must be dismissed.

### 2. The Petitioning Creditors Have Failed to Establish That the Petitioning Claimholder Is Undersecured by At Least $13,475.

In order to prevail on an involuntary petition a petitioning creditor must prove that their claim is undersecured by at least $13,475.00. See 11 U.S.C. § 303; In re Euro-American Lodging, 357 B.R. at 712. Petitioning Creditors allege that the Alleged Debtors have incurred secured and unsecured debt of approximately $15 million to the Petitioning Creditors and have submitted into evidence of numerous mortgages and notes executed between the parties. The Petitioning Creditors have not presented any documentary evidence in support of allegations that the property or their claims are undersecured. Based on the lack of documentation the Court finds that the Petitioning Creditors have failed to establish that their claim is undersecured by at least $13,475.00.

### 3. The Petitioning Creditors Have Failed to Establish That There Are Fewer Than Twelve Claimholders

The identification of the number of qualifying creditors is necessary in the determination of whether the involuntary petition which the Petitioning Creditors filed can be sustained over the objection of the Alleged Debtors. The Petitioning Creditors alleged that there are two creditors, AMK and MBM. At the hearing held on April 29, 2009, Mr. Kapson testified

that he did title and lien searches on the properties, spoke with speculators and investors, and believes there to be fewer than 12 creditors. See Tr. at 14:22-15:16. Although the Alleged Debtors have not filed any opposition to Petitioning Creditors' assertion, neither have they filed any schedules. Therefore, the Court finds that the record does not clearly establish the number of creditors of the Alleged Debtors.

> 4. The Petitioning Creditors Have Failed to Establish That the Alleged Debtors Were Generally Not Paying Their Debts As They Became Due.

For the reasons set forth immediately above, this Court is unable to make any determination concerning whether the Alleged Debtors were generally not paying their debts when they became due. The Petitioning Creditors have failed to carry their burden of proof as to this element of an involuntary petition under Section 303(h)(1) of the Bankruptcy Code, and the petition must be dismissed.

## CONCLUSION

The Petitioning Creditors have failed to set forth the required elements of an involuntary petition under Section 303 of the Bankruptcy Code in order to sustain the petition over the objection of the Alleged Debtors. The involuntary petition must be dismissed.

IT IS SO ORDERED.

Dated: Brooklyn, New York
      March 11, 2010

                                            s/ Dennis E. Milton
                                              DENNIS E. MILTON
                                    United States Bankruptcy Judge